PER CURIAM.
 

 DECISION
 

 This is an appeal from a decision of the United States Claims Court (Margolis, J.) granting defendant’s motion for summary judgment and denying plaintiffs’ cross-motion for summary judgment. 9 Cl.Ct. 223 (1985). We affirm.
 

 BACKGROUND
 

 Plaintiffs-appellants are 2,048 disabled military retirees entitled to receive longevity retired pay and who also qualify for disability compensation from the Veterans Administration (VA). However, pursuant to 38 U.S.C. §§ 3104-3105 (1982) they are precluded from receiving both at the same time. Rather, each is required to waive retired pay equal in amount to any VA compensation received. Absent such a waiver they cannot receive VA disability benefits.
 

 Appellants brought an equal protection challenge to the constitutionality of the
 
 *1026
 
 above statutes under the due process clause of the fifth amendment. In rejecting the challenge, the Claims Court held that the special benefits accorded to retirees of the uniformed services (commissary, post exchange, recreational, travel, health, and eligibility to retire after only 20 years of service, regardless of age, without making financial contributions to a retirement fund) are such that this class of individuals is not situated similarly to other groups that are or are not required to waive retirement pay to receive tax-free YA benefits. It also held that the statutory scheme effected a legitimate governmental purpose in a rational way by limiting the amount of compensation appellants receive. The question on appeal is whether these conclusions are errors of law and the statutory scheme constitutes constitutionally improper discrimination against disabled military retirees. Appellants have sought the amount of back pay they did not receive during the 6 years preceding the filing of their complaints as a result of the prohibition on dual benefits and the waiver requirement.
 

 OPINION
 

 The Claims Court carefully reviewed the legislative history of the challenged statute and found that the prohibition against dual compensation for military retirees goes back to 1891, Act of March 3,1891, ch. 548, 26 Stat. 1082, although the waiver provision first appears in the statutes in 1944. Act of May 27, 1944, ch. 209, 58 Stat. 230. The stated congressional purpose was to save money, now estimated by the government at more than two billion dollars per year. Although Congress has many times considered further amendments to the statute, it has not changed its view that the basic legislation represents sound fiscal policy. The provision for optional waiver of taxable retirement pay in favor of tax exempt disability compensation has to some extent ameliorated any conceived hardship on those subject to the statute. A waiver provision is not unique to appellants. We see it in reference to civilian service with the government. A military retiree, except for those with combat injuries, is required to waive all of his retired pay if he wishes to have his years of uniformed service counted with his civilian service in the calculation of a civil service annuity. 5 U.S.C. § 8332(c)(2) (1982); 5 C.F.R. § 831.301(c) (1982);
 
 see Bailey v. United States,
 
 511 F.2d 540 (Ct.Cl.1975).
 
 Cf. Appel v. Office of Personnel Management,
 
 777 F.2d 691 (Fed.Cir.1985) (civil service disability annuity suspended while workers’ compensation was being received from the Department of Labor).
 

 Appellants recognize that it is their burden to overcome the presumption of constitutionality by identifying a similarly situated group and then to demonstrate that they are being treated disparately and that the statute manifests a patently arbitrary classification utterly lacking in rational justification. They have not been able to do this. It is hard to imagine a more rational basis for congressional action than fiscal restraint. It has long been held proper for Congress to place a ceiling on the total compensation which an individual can receive from the government. In doing so the action of Congress in singling out certain classes of persons against whom to apply the restriction has had judicial approval against equal protection challenges.
 
 United States Railroad Retirement Board v. Fritz,
 
 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980);
 
 Puglisi v. United States,
 
 564 F.2d 403, 215 Ct.Cl. 86 (1977).
 

 In their brief appellants have argued both that they are similarly situated with all other federal retirees and that, due to the nature of military employment, they have historically been accorded preferential treatment. At oral argument their counsel somewhat reconciled these positions by conceding that there are apparent differences in the classes of employment sought to be compared to appellants but that those differences are not wide. The Claims Court, of course, took the position that “[t]he special benefits accorded retirees of the uniformed services are such that this class of individuals is not situated similarly to other groups that are not required to
 
 *1027
 
 waive retirement pay to receive tax-free YA benefits.” 9 Cl.Ct. at 227. That court also determined that under 38 U.S.C. § 3104 (1982) retired pay is full compensation for a military retiree’s service to the nation but that it permits those retirees to receive the financial benefit of tax-exempt disability pensions through the waiver provisions of section 3105. This is the type of balance Congress is entitled to strike. We do not therefore discern error in the legal conclusion of the Claims Court.
 

 Appellants, however, contend that Congress did not act in a constitutional manner here because it did not have a rational basis for the classification distinction it has drawn against appellants. Therefore, we are invited to declare unconstitutional its acts set forth in sections 3104-3105. In a scholarly brief appellants contend that the Claims Court was mistaken by invoking the rational basis test of
 
 Railroad Retirement Board v. Fritz,
 
 449 U.S. 166,101 S.Ct. 453, and overlooking the alleged trend back to
 
 F.S. Royster Guano Co. v. Virginia,
 
 253 U.S. 412, 416, 40 S.Ct. 560, 562-64 L.Ed. 989 (1920). The latter case held that any legislative classification required a demonstrably fair and substantial relation to its legislative objective in order to pass Supreme Court scrutiny. In other words, although a classification may be rational in a literal sense, the Court can still find that it does not have a fair and substantial relation to the object of the law. Attention is invited to recent Supreme Court cases which follow
 
 Guano
 
 and we are admonished to take note of differences therein between members of the Supreme Court who have expressed divergent views about the degree of deference properly afforded the legislature when equal protection issues are at stake.
 

 The host of cases relied on by appellants do not undermine the decision of the Claims Court. They do demonstrate, under varying factual contexts, that it is sometimes most difficult to apply equal protection and that a rigid standard does not guarantee such protection when applied mechanically. We do not think that any such difficulty exists in the present case. Under the line of cases relied on by the government and by the Claims Court, and under the line relied on by the appellants, the result must be the same here. For nearly a century Congress has held to the consistent view that there was no entitlement to both retired pay and a disability pension for the same period of military service. For over 40 years it has allowed retirees to elect which benefit they wish to accept, through exercise of the waiver provisions of 38 U.S.C. § 3105. The balance it has thus struck is not only rational, it also bears a demonstrably fair and substantial relation to legitimate legislative objectives and does so without denying equal protection.
 
 See First National Bank of Oregon v. United States,
 
 571 F.2d 21, 23, 215 Ct.Cl. 609 (1978).
 

 AFFIRMED.